# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| **LEEJAMAHL A. WASHINGTON,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **UNIFIED GOVERNMENT OF** | ) |
| **WYANDOTTE COUNTY/ CITY** | )   Case No. _____ |
| **OF KANSAS CITY, KANSAS** | ) |
| Serve At: | ) |
| Unified Government Clerk's Office | ) |
| 701 N 7th St Ste 323 | ) |
| Kansas City, Kansas 66101 | )   REQUEST FOR JURY TRIAL |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW, Plaintiff Leejamahl A. Washington (hereinafter, "Plaintiff") by and through his undersigned counsel and for his Complaint against Defendant Unified Government of Wyandotte County/Kansas City, Kansas (hereinafter, "Defendant") alleges and states as follows:

### Parties and Jurisdiction

1. Plaintiff is a citizen of the United States, residing in Kansas City, Wyandotte County, Kansas and, at all times pertinent to this Complaint for Damages, was an "employee" within the meaning of the Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq*. ("Title VII") and the KAAD.

2. Defendant is a political subdivision organized under the laws of the State of Kansas. At all times pertinent to this Complaint for Damages, Defendant was a "person" within the meaning of Title VII.

3. This is an employment discrimination and retaliation lawsuit based upon and arising under Title VII.

1

4. All of the unlawful acts and practices set forth below were committed within the city of Kansas City, Wyandotte County, Kansas. Jurisdiction and venue are proper in the District of Kansas pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1391.

## Administrative Procedure and Procedural Posture

5. On or about February 14, 2022, Plaintiff timely filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of Plaintiff's race, color and unlawful retaliation. (Attached as Exhibit A and incorporated herein by reference).

6. On or about December 19, 2022 the United States Department of Justice ("DOJ") issued to Plaintiff a Notice of Right to Sue Defendant KCKFD. (Attached as Exhibit B and incorporated herein by reference).

7. This action has been filed within ninety (90) days of Plaintiff's receipt of such Notice.

8. The aforesaid Charges of Discrimination provided the EEOC/DOJ sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of the EEOC/DOJ investigation of Plaintiff' claims and the involved parties, which could reasonably be expected to have grown out of the Charge of Discrimination.

9. Through the filing of Plaintiff's Charge of Discrimination, Defendant was afforded notice of Plaintiff's claims and the opportunity to participate in voluntary compliance.

10. Plaintiff has satisfied all private, administrative and judicial prerequisites to the institution of this action.

## General Allegations Common to All Counts

11. Plaintiff is Black.

12. Plaintiff began his employment with Defendant in approximately 2001.

13. During Plaintiff's employment with Defendant, Defendant engaged in a pattern and practice of discriminating and retaliating against Black employees.

14. As part of this pattern, Defendant would frequently move Black employees from station to station, instead of allowing them to remain at a set station and prevented Black employees from being promoted.

15. As part of this pattern, Defendant would segregate many of its Black firefighters by station.

16. As part of this pattern, Defendant would disciple and even terminate Black employees for engaging in conduct for which White employees were not disciplined.

17. Within Plaintiff's first year on the job (in or about 2001 or 2002), Plaintiff walked into the break room in Station 7 and observed other employees wearing Nazi memorabilia with swastikas on them.

18. Plaintiff reported this to his captain at the time, but nothing was ever done about it and no one was ever disciplined.

19. Years later, Plaintiff witnessed a noose in fire station number 18, in front of Plaintiff's locker.

20. Plaintiff reported the noose to Defendant's Human Resources Department (hereinafter "HR") but nothing was ever done about it.

21. Previously Plaintiff also had trash placed in his locker at this station and the Captain at this station asked Plaintiff to clean up someone else's tobacco spit, while no White employees in the area were asked to do this.

22. Around 2016, when Plaintiff was working at Station 17, the fire fighters were outside getting some exercise during their shift.

23. At this time, Plaintiff mentioned that chiggers, tiny biting mites, were bothering him. Firefighter Brett McCoy responded, "I thought you all got along." When Plaintiff asked him what he meant, Brett McCoy's made a racial joke insinuating a racial epithet, stating "I thought all chiggers got along."

24. Throughout Plaintiff's years in the fire department, Plaintiff was repeatedly threatened with discipline and termination for engaging in conduct for which other employees—who were White—were not disciplined or threatened with discipline or termination.

25. During Plaintiff's employment with the Defendant, Chief John Paul Jones (hereinafter, "Jones") disciplined and threatened to terminate Plaintiff over a Facebook post that did not violate Defendant's Social Media policy.

26. Jones also had Plaintiff moved to Station 10 and several other Black firefighters were sent to Station 10.

27. Station 10 was informally known as the "Black Fire Station" within Defendant's Fire Department.

28. Plaintiff was trained to work as a driver.

29. Working as a driver offered more pay.

30. Plaintiff worked as a driver, filling in around 2010.

31. Plaintiff earned more when filling in as a driver.

32. Jones also took this away from Plaintiff and told Plaintiff he was not allowed to fill in as a driver any longer.

33. Plaintiff complained to HR and to the EEOC numerous times about this treatment, but Defendant never did anything about it.

34. Because of the stress and anxiety of being discriminated against and retaliated against during his employment, Plaintiff had to be prescribed medicine for stress and anxiety for several years.

35. In April of 2021, Plaintiff testified in the trial of Jyan Harris (hereinafter "Harris").

36. Harris was another employee of Defendant, who had also been employed by Defendant as a firefighter.

37. Harris had been discriminated against by Defendant because of his race, Black, and retaliated against after making complaints of discrimination.

38. Harris sued Defendant for discrimination and retaliation.

39. Harris's suit was tried in this Court before a jury.

40. Plaintiff was subpoenaed to testify in Harris's case.

41. Plaintiff gave truthful testimony.

42. The jury found that Defendant discriminated against Harris and awarded Harris damages.

43. After Plaintiff's testimony, Defendant began treating Plaintiff increasingly worse.

44. Plaintiff was moved from station to station frequently instead of being allowed to stay at Plaintiff's permanent station, number 16.

45. In approximately eight out of every ten shifts, Plaintiff was sent to stations considered to be the stations for Black firefighters, which were Station 10 and Station 7.

46. Being moved around daily is difficult for a firefighter and is in violation of Defendant's policies.

47. Being moved means a firefighter never knows what to expect at work each day, as each station has its own procedures and rules.

5

48. Firefighters live at the station to which they are assigned for the entirety of the 24-hour period that makes up their shift.

49. Moving a firefighter frequently prevents that firefighter from having consistency on the job.

50. Moving a firefighter frequently causes them to have to travel a lot.

51. Moving a firefighter frequently causes them to have to pack up and move their gear and bedding frequently.

52. Moving a firefighter frequently makes it unclear what bed they will be sleeping in every day.

53. Moving a firefighter frequently prevents them from having the ability to make meaningful connections with the firefighters at their station.

54. These connections not only help a firefighter work a difficult job but are essential when firefighters are put in dangerous situations as part of their job.

55. Preventing a firefighter from making meaningful connections with his fellow firefighters literally endangers his life.

56. Under Defendant's policies, firefighters go through a bidding process for a station of their choosing.

57. Moving a firefighter frequently circumvents this process.

58. Moving a firefighter frequently deprives a firefighter from receiving what is essentially a job perk.

59. Moving a firefighter frequently causes a long-time firefighter, who has earned the right to choose his station, to be treated as a new firefighter on the job.

60. Defendant did not frequently move other White employees around in this manner.

61. Plaintiff complained to HR about this treatment, but nothing ever happened, and HR never contacted Plaintiff about his complaint.

62. Plaintiff has some light sensitivity to his eyes.

63. All of Plaintiff's fellow firefighters knew he had this sensitivity to light.

64. Plaintiff had a conversation about Plaintiff's sensitivity to light with Captain William Blackwell (hereinafter "Blackwell"), who is White.

65. On or about September 2, 2021, Blackwell asked Plaintiff to turn on a light switch.

66. Because of Plaintiff's light sensitivity, he did not do this.

67. Plaintiff had the light off and Blackwell came in and turned it on.

68. When Blackwell left the room, Plaintiff turned it off and Blackwell came back in and turned it on.

69. Later, Blackwell stated that he gave Plaintiff a direct order to turn it on.

70. Blackwell wrote Plaintiff up for refusing a direct order and for abusive language/conduct.

71. Plaintiff had never seen any White employee written up for something so minor.

72. Upon information and belief, White employees were not written up for such conduct.

73. Plaintiff had not disobeyed a direct order.

74. Plaintiff had frequently seen White firefighters have disagreements with their captains or not do what a captain said and not get written up or be accused of abusive language.

75. Upon information and belief, Blackwell wrote up Plaintiff because of Plaintiff's race, and/or because Plaintiff opposed discrimination.

76. While Blackwell was writing Plaintiff up, another employee (who is White) heard Blackwell speaking to Acting Battalion Chief Christopher Ruth (hereinafter "Ruth") (who is also White).

77. Blackwell commented to Ruth that when Blackwell wrote up the incident involving Plaintiff, it did not sound that bad.

78. Ruth responded, telling Blackwell to put more in it then, indicating that Blackwell should try to make the allegations against Plaintiff sound as bad as possible, even if it was not truthful.

79. Blackwell responded, "he is going to feel the full wrath of Bill Blackwell."

80. Upon information and belief, Blackwell did this and said these things because of Plaintiff's race and because of Plaintiff's prior complaints of discrimination and Plaintiff's opposition to discrimination.

81. On November 15, 2021, Plaintiff was suspended without pay.

82. Plaintiff again made complaints to HR about this discrimination, but Plaintiff never heard back from them.

83. As a result of his treatment by Defendant, Plaintiff again had to go on medicine for anxiety and depression.

84. Since this time, Plaintiff has continued to be discriminated against and moved around stations.

## COUNT I – DISPARATE TREATMENT AND HARASSMENT BASED ON RACE IN VIOLATION OF TITLE VII

85. Plaintiff incorporates the allegations contained in the above-stated paragraphs as if fully set forth herein.

86. During Plaintiff's employment with Defendant, Plaintiff was subjected to different terms and conditions of employment, based on his race, Black, by Defendant.

87. During Plaintiff's employment with Defendant, Plaintiff was subjected to an ongoing practice and/or pattern of discrimination/disparate treatment based on his race, Black, by Defendant.

88. Plaintiff was subjected to different work requirements than other similarly situated White employees in regard to the terms and conditions of his employment.

89. Plaintiff's race was a motivating factor in Defendant's decision to discipline Plaintiff.

90. Plaintiff's race was a motivating factor in Defendant's decision to suspend Plaintiff's employment.

91. Plaintiff's race was a motivating factor in Defendant's decision to harass Plaintiff and prevent him from working as a driver and receiving additional pay for this.

92. Defendant's actions and/or omissions constitute a pattern or practice of discriminatory behavior.

93. All actions or inactions of or by Defendant occurred by or through its agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

94. Defendant's actions constitute unlawful employment discrimination against Plaintiff in violation of Title VII, as alleged herein.

95. As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation and humiliation, increased anxiety, increased difficulty sleeping, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendant for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as allowed by law and that this Court deems just and proper.

## COUNT II – HOSTILE WORK ENVIRONMENT BASED ON RACE IN VIOLATION OF TITLE VII

96. Plaintiff incorporates the allegations contained in the above-stated paragraphs as though fully set forth herein.

97. During Plaintiff's employment with Defendant, Plaintiff was subjected to a hostile and offensive work environment based upon his race, Black, by Defendant's employees and Plaintiff's supervisors, which constituted a continuing pattern of unwelcome harassment, which Plaintiff found, and which a reasonable person would find, to be offensive, and which altered the terms, conditions and/or privileges of his employment.

98. Defendant's actions and/or omissions constitute a pattern or practice of discriminatory behavior.

99. All actions or inactions of or by Defendant occurred by or through its agents, servants, or employees acting within the course and scope of their employment, as set forth herein.

100. Defendant's actions constitute unlawful employment discrimination against Plaintiff in violation of Title VII, as alleged herein.

101. As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in

the form of embarrassment, degradation and humiliation, increased anxiety, increased difficulty sleeping, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendant for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as allowed by law and that this Court deems just and proper.

## COUNT III – RETALIATION
## IN VIOLATION OF TITLE VII

102. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs.

103. Plaintiff is a member of a protected class because of his race, Black.

104. Plaintiff engaged in protected activity under Title VII by reporting racial harassment to HR, informing Defendant of inappropriate and harassing conduct.

105. Plaintiff engaged in protected activity under Title VII by testifying on behalf of Harris.

106. Defendant took adverse actions against Plaintiff as a result of his engaging in the aforementioned protected activity.

107. As a direct and proximate result of the unlawful conduct of Defendant as set forth herein, Plaintiff has suffered damages which include emotional distress, pain and suffering, past and future wages and benefits, career damage and diminished career potential, mental distress in the form of embarrassment, degradation and humiliation, increased anxiety, increased difficulty sleeping, loss of enjoyment of life, and other non-pecuniary losses.

108. By failing to take prompt and effective remedial action, Defendant, in effect condoned, ratified and/or authorized the discrimination against Plaintiff.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendant for economic damages, including, but not limited to: back pay, lost benefits, and front pay, injunctive relief, compensatory damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as allowed by law and that this Court deems just and proper.

## Demand for Jury Trial and Request for Place of Trial

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all counts and allegations of wrongful conduct alleged in this Complaint, and all other matters arising therefrom. Pursuant to D. Kan. Rule 40.2(a), Plaintiff requests the trial be held in Kansas City, Kansas.

Respectfully Submitted,

EDELMAN, LIESEN & MYERS, L.L.P.

/s/Sarah. C. Liesen _____
Sarah C. Liesen          KS #26988
4051 Broadway, Ste 4
Kansas City, Missouri 64110
Telephone: (816) 301-4056
Facsimile: (816) 463-8449
sliesen@elmlawkc.com

ATTORNEY FOR PLAINTIFF